# EXHIBIT A

**SETTLEMENT AGREEMENT AND FULL AND FINAL**
**RELEASE OF CLAIMS RAISED IN**
*Kozich v. ABA Solutions, Inc.*, No. 8:21-cv-1876 (M.D. Fla.)

This Settlement Agreement and Full and Final Release of Claims Raised in *Kozich v. ABA Solutions, Inc.*, No. 8:21-cv-1876 (M.D. Fla.) ("Agreement" or "Settlement Agreement") is entered into by and between Plaintiff Sarah Kozich ("Plaintiff") and Defendant ABA Solutions, Inc. ("Defendant" or "ABA Solutions"). Plaintiff and Defendant are referred to herein as the "Parties."

WHEREAS, Plaintiff initiated the lawsuit now captioned *Kozich v. ABA Solutions, Inc.*, No. 8:21-cv-1876 (the "Action"), pending in the United States District Court for the Middle District of Florida (the "Court");

WHEREAS, in the Action, Plaintiff asserted wage and hour claims under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA");

WHEREAS, Defendant denies that it has committed any wrongdoing or violated the FLSA, has vigorously disputed the claims asserted in the Action, and asserts that it has strong defenses to the claims in the Action;

WHEREAS, Plaintiff has accepted a settlement fully and finally resolving any and all claims that she pleaded individually in the Action against Defendant, including, but not limited to, for alleged back wages, liquidated damages, any and all other monetary damages of any kind (including but not limited to interest), and other relief of any nature whatsoever arising from the Action;

WHEREAS, Plaintiff and Plaintiff's counsel have made a thorough and independent investigation of the facts and law relating to the allegations in the Action. In agreeing to this Settlement Agreement, Plaintiff considered: (a) the facts developed during discovery in the Action and the law applicable thereto; (b) the attendant risks of continued litigation and the uncertainty of the outcome of the claims alleged against Defendant; and (c) the desirability of consummating this Settlement according to the terms of this Settlement Agreement. Plaintiff has concluded that, pursuant to the FLSA, the terms of this Settlement are a fair and reasonable resolution of a *bona fide* dispute, and that it is in the best interests of Plaintiff to settle her claims against Defendant pursuant to the terms set forth herein;

WHEREAS, to avoid the uncertainty, burdens, and expense of further litigation, and without admission or finding of liability or wrongdoing on the part of Defendant, Plaintiff and Defendant desire to settle and finally resolve all claims for attorneys' fees, costs, and expenses, including all those arising out of the Action, and those arising out of issues or claims that have been or could have been asserted by Plaintiff against Defendant in the Action through the date Plaintiff executes this Agreement;

NOW, THEREFORE, in consideration of the promises that are contained in this Agreement and other good and valuable consideration, the legal adequacy and sufficiency of which is acknowledged, it is agreed as follows:

1. **No Admission of Liability**. This Agreement and compliance with this Agreement shall not be construed as an admission by Defendant of any liability whatsoever, or as an admission by Defendant of any violation of the rights of any person or entity, or violation of any order, law, statute, duty, or contract whatsoever against any person or entity. Defendant specifically disclaims any liability to Plaintiff or any other person for any alleged violation of the rights of Plaintiff or any person, or for any alleged violation of any order, law, statute, duty, or contract on the part of Defendant, their related companies, employees, agents, or employees or agents of the related companies.

2. **Settlement Consideration**.

    a. Payment to Plaintiff: Within the time and in the manner specified in subsection (c) below, Defendant will issue to Plaintiff, through Plaintiff's counsel:

        (i) a check in the gross amount of $1,500.00, representing payment of all claimed wage damages of whatsoever nature, including without limitation alleged back wages and interest. This payment is subject to all applicable withholdings and standard payroll deductions, and Defendant will issue to Plaintiff a W-2 Form for this payment; and

        (ii) a check in the gross amount of $1,500.00 representing payment of all claimed non-wage compensatory damages, liquidated damages, and/or punitive damages of whatsoever nature. Defendant will issue to Plaintiff a Form 1099 for this payment.

    b. Payment of Attorneys' Fees, Costs, and Expenses: Within the time and in the manner specified in subsection (c) below, Defendant will issue a check to Plaintiff's counsel, Berger Montague PC, for a payment in the gross amount of $21,000.00. Defendant will issue a Form1099 to Berger Montague PC for this payment. This amount was negotiated separately from the amount paid to Plaintiff pursuant to this Agreement.

    c. Timing and Manner of Payment: Within ten (10) business days following the Court's approval of this Agreement dismissing the Action with prejudice as to Plaintiff's individual claims and without

        prejudice as to the claims of the proposed collective, Defendant shall issue the checks described herein.

    d.    It is confirmed and acknowledged between the Parties that money paid to Plaintiff pursuant to Section 2(a) through 2(d) represents settlement of Plaintiff's claims against Defendant and consideration for the releases and other promises, representations, and warranties contained in this Agreement.

3.    **Dismissal with Prejudice**. The Parties agree that they will jointly seek approval of this Settlement Agreement and dismissal with prejudice as to Plaintiff's individual claims and without prejudice as to the potential collective claims in the Action, within twenty-one (21) days of execution of this Settlement Agreement.

4.    **Complete Release by Plaintiff of Claims Individually Pleaded in the Action**.

    a.    **Claims Released by Plaintiff**: Plaintiff irrevocably and unconditionally releases all the individually pleaded claims, including all wage and hour claims, that were or could have been asserted in the Action that she had or may now have, from the beginning of time until the date Plaintiff executes this Agreement, against the Released Parties listed in Section 4(b), except that she is not releasing any claim that relates to: (1) the right to enforce this Agreement, (2) any rights or claims that arise after signing this Agreement, and (3) any rights or claims that cannot lawfully be released. Subject only to the exceptions just noted, Plaintiff is releasing all known and unknown claims, promises, causes of action, or similar rights related to the all the individually pleaded claims in the Action, including all wage and hour claims, that were or could have been asserted in the Action ("Released Claims") with respect to any Released Party listed in Section 4(b). Plaintiff understands that the Released Claims she is releasing might arise under many different laws (including statutes, regulations, other administrative guidance, and common law doctrines), such as, but not limited to, the following:

        Federal and state laws governing payment of wages, such as the Fair Labor Standards Act of 1938, as amended, as well as any state or local law (both statutory and common law) pertaining or related to hours of work, meal breaks, payment of wages, compensation, overtime pay, damages, interest, and/or penalties including without limitation all claims that were asserted or could have been asserted in the Action based on the allegations in the Action, regarding events

that occurred or are alleged to have occurred regarding Plaintiff's employment with Defendant.

<u>Anti-retaliation laws</u>, such as under the Fair Labor Standards Act of 1938, as amended, and any other federal, state, or local laws prohibiting retaliation that were asserted or could have been asserted in the Action based on the allegations in the Action, regarding events that occurred or are alleged to have occurred regarding Plaintiff's employment with Defendant.

<u>Released Claims</u> which may have accrued include claims for attorneys' fees, expenses or costs arising out of the Action.

b. **Released Parties**: The "Released Parties" are Defendant and all of its predecessors, successors, current, future and former parents, subsidiaries, affiliates, related companies, partnerships, investors, or joint ventures, and, with respect to each of them, their predecessors and successors; and, with respect to all of the foregoing entities, all of their past, present, and future employees, officers, directors, stockholders, owners, representatives, assigns, attorneys, agents, insurers, plans, trustees, and any other persons acting by, through, under or in concert with any of the persons or entities listed in this subsection, and their successors. Any individual person or entity included in the Released Parties shall be referred to individually as a "Released Party."

5. **Court Approval**. The Parties will seek Court approval of the Settlement Agreement. If the Court does not approve the settlement, the Parties agree to engage in follow-up negotiations with the intent of resolving the Court's concerns that precluded approval, and, if feasible, to resubmit the settlement for approval within thirty (30) days. If the settlement is not approved as resubmitted or if the Parties are not able to reach another agreement, then either party may void the Settlement Agreement; at that point, the Parties agree that each shall return to their respective positions on the day before this Settlement Agreement was finalized and that the Settlement Agreement shall not be used in evidence or argument in any other aspect of their litigation.

6. **Counterparts**. This Agreement may be executed in any number of counterparts and by different Parties hereto in separate counterparts, with the same effect as if all Parties had signed the same document. All such counterparts shall be deemed an original, shall be construed together, and shall constitute one and the same instrument.

7. **Governing Law**. This Agreement shall be construed and interpreted in accordance with the laws of the State of Florida, without giving effect to any internal conflict or choice of laws rules.

8. **Severability**. Should any part of this Agreement be found to be illegal or in conflict with any law, or otherwise rendered unenforceable or ineffectual, the remaining parts of this Agreement shall be deemed severable and shall remain in effect so long as the remaining parts continue to constitute in substance the agreement that Plaintiff and Defendant intended to enter.

9. **Non-Assignment**. Plaintiff agrees that she has not and will not assign this Agreement, any part of this Agreement, or any rights arising under this Agreement, to any person or entity. Plaintiff further represents and warrants that, as of the effective date of this Agreement, the Released Claims have not been sold, assigned, or transferred, in whole or in part, to any other person or entity.

10. **Consideration of Release**. Plaintiff represents and warrants that (1) she is entering into this Agreement knowingly, and voluntarily, free from fraud, duress, coercion, or mistake of fact; (2) this Agreement is in writing and is understandable; (3) this Agreement explicitly waives current claims; (4) this Agreement does not waive future claims; (5) she is being paid something to which she was not already entitled; (6) Defendant advised her in writing to consult an attorney at her own expense; (7) Defendant gave her reasonable time to consider her release of claims; and (8) Plaintiff, through counsel, negotiated the terms of this Agreement.

11. **Payment of Applicable Taxes**. Plaintiff is and shall be solely responsible for all federal, state, and local taxes that may be owed by her by virtue of the receipt of any portion of the monetary payment provided to her under this Agreement. Defendant is responsible for all employer-side payroll taxes on the W-2 portion of payments under this Agreement. Plaintiff agrees that should any of the funds she receives pursuant to this Agreement be subject to federal, state or local taxes, plaintiff bears the sole and exclusive responsibility for paying such taxes, as well as any interest and penalties imposed thereon by the Internal Revenue Service or any other taxing authority and she agrees to indemnify Defendant to the extent that the Internal Revenue Service and/or other taxing authority seeks to recover unpaid taxes, penalties, and interest from Defendant on such sum.

12. **Entire Agreement**. This Agreement constitutes the entire, complete, and integrated statement of each and every term and provision agreed to by and between Plaintiff and Defendant related to Plaintiff's release of individually pleaded claims, including all wage and hour claims, that were or could have been asserted in the Action and is not subject to any condition not provided for herein. This Agreement supersedes any prior representations, promises,

or warranties (oral or otherwise) made by Plaintiff or Defendant, and neither Plaintiff nor Defendant shall be liable or bound to the other for any prior representation, promise, or warranty (oral or otherwise) except for those expressly set forth in this Agreement. This Agreement shall not be modified or canceled in any respect except as provided herein by a writing executed by Plaintiff and Defendant.

IN WITNESS WHEREOF, the Parties each voluntarily and without coercion have caused this Agreement to be signed and entered under seal as of the respective dates written below as their free acts and deeds.

## **PLAINTIFF**

**AGREED AND ACCEPTED**:

DocuSigned by:
Sarah Kozich

Date: 8/9/2022

## **DEFENDANT ABA SOLUTIONS, INC.**

**AGREED AND ACCEPTED**:

NAME Jason Wallace
TITLE Owner

Date: 8/17/22